# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Rebecca Sang,

    Plaintiff,

                          Civ. No. 09-455 (RHK/SRN)
                          **MEMORANDUM OPINION**
                          **AND ORDER**

v.

The City of St. Paul, *et al.*,

    Defendants.

---

Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, Minneapolis, Minnesota, Theodore D. Dooley, Ted Dooley Law Offices, LLC, Saint Paul, Minnesota, for Plaintiff.

Jason M. Hiveley, Iverson Reuvers, LLC, Bloomington, Minnesota, for Defendants.

---

## INTRODUCTION

In this civil rights action, Plaintiff Rebecca Sang has sued the cities of St. Paul and Minneapolis and 39 individual police officers[1] (collectively, "Defendants"), alleging various violations of federal and Minnesota law. Defendants now move for summary

---

[1] The individual Defendants are Don Anderson, Ann Bebeau, Lance Christianson, Kent Cleveland, Jon Conney, Jay Curiel, Pat Daly, Louis Ferraro, Dan Ficcadenti, Greg Gravesen, Bill Haider, Don Hase, Andrew Heroux, Frank Judge, Chris Kasal, Pat Kolodge, Phil Koski, Josh Lego, Colleen Luna, Lynn Mahnke, Eric Meyers, Frank Molina, Joe Neuberger, Anthony Nikula, Joe Ryan, Matt St. Sauver, Jeff Thissen, Matt Webb, Doug Whittaker, Lee Vang, Kevin Reinke, Eric Skog, Steven Frazer, "Officer Sass", and "Officers K-O". (Am. Compl. ¶¶ 11-18.)

judgment. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

## BACKGROUND

Viewed in the light most favorable to Sang, see Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000), the events giving rise to this action are set forth below.

Sang is a California resident who traveled to St. Paul, Minnesota, in the fall of 2008 to protest the Republican National Convention ("RNC"). (Sang Interrog. Resp. No. 1, Sang Dep. Tr. at 10-11.) On September 2, 2008, she went to Mears Park in downtown St. Paul at the request of her friend, Jason Johnson. (Sang Dep. Tr. at 23-24.) At that time, Mears Park was the starting point for the "March for Our Lives," which drew a large crowd of participants. (Frazer Dep. Tr. at 47-48; Officer Johnson Aff. ¶ 2; Skog Aff. ¶ 3.) When Sang arrived at the park, police had recently made an arrest, causing a large crowd of 1,000 protesters to become agitated and surround the arrest team. (Frazer Dep. Tr. at 54-55, 59-61; Frazer Aff. ¶ 3.) Some protesters in the crowd threw rocks, small bricks, and bags of urine at the officers. (Frazer Dep. Tr. at 61-62, 64.) When Sang noticed the police activity, she along with Johnson approached to observe what was occurring. (Sang Dep. Tr. at 27-28.)

Sang and Johnson joined the crowd that was observing police conduct, and then walked into a crosswalk. (Id. at 29-32.) At that time, Sang was not directed to move away from the scene or disperse. (Sang Interrog. Resp. Nos. 19, 35.) Sang and Johnson

then walked a short distance to another crosswalk, moving in close proximity to the mounted police. (Sang Dep. Tr. at 31-34; Wing Aff. Ex. A.) Neither she nor Johnson made contact with any police officer or police equipment. (Wing Aff. Ex. A.)

Sang and Johnson then began to back away from the police activity. (Sang Dep. Tr. at 36.) While backing up, she realized that Johnson was no longer next to her and that he was being arrested. (Id.) She continued to back away from the police activity, moving from the street to the sidewalk, with two mounted police officers moving toward her. (Id. at 37.) Sang overheard an officer say, "That one? The one in the yellow sweater?" (Id. at 38.) She then realized that the officers were identifying her. (Id.)

Sang, now backed up against a building by mounted police officers Jerry Johnson[2] and Defendant Eric Skog, put her hands in the air. (Id. at 38; Officer Johnson Aff. ¶ 5; Skog Aff. ¶ 9.) Skog then seized her by the arm and led her to an arrest team. (Skog Aff. ¶ 9.) At this time, an unidentified officer pointed a canister of pepper spray at her, but did not utilize it. (Sang Dep. Tr. at 38.) She was then placed in plastic handcuffs and led to a squad car. (Id. at 39-40.) Her handcuffs were later tightened, causing pain and slight bruising of her wrists. (Id. at 40.)

Defendants contend that Sang was arrested because Officer Johnson observed Johnson pass a bag to Sang, which Officer Johnson believed to contain a hazardous material intended to be used against police officers. (Officer Johnson Aff. ¶ 3; Skog Aff.

---

[2] To avoid confusion, Officer Jerry Johnson will hereafter be referred to as "Officer Johnson," and Jason Johnson will be referred to as "Johnson."

3

¶ 6.) After the bag was passed, Skog claims that he detected a strong odor of ammonia. (Skog Aff. ¶ 6.) This information was communicated to Commander Steven Frazer, who determined that Johnson and Sang should be arrested. (Officer Johnson Aff. ¶ 3; Skog Aff. ¶ 7.)

Sang denies receiving any object from Johnson prior to her arrest (Sang Dep. Tr. at 43-44; Sang Interrog. Resp. No. 33), and video footage of the relevant events does not show any exchange. (Wing Aff. Exs. A, E; Nickitas Decl. Exs. 8-10.) When Sang's property was inventoried upon her arrest, no bag containing any material was found. (Sang Inmate Property Inventory.)

Sang was booked for conspiracy to use a harmful substance, a felony under Minn. Stat. § 624.732. (Supplemental Offense/Incident Report at 6.) She was held overnight and released the next day. (Sang Dep. Tr. at 44.) The charge was later dismissed. (Id. at 44-45; Frazer Dep. Tr. at 87.)

As a result of her arrest, Sang contends that she endured severe emotional distress, suffering from anxiety and panic attacks, nightmares, sadness, fear of horses and police officers, depression, and an inability to complete tasks. (Sang Dep. Tr. at 54.) She further contends that this emotional distress caused her to suffer non-permanent menstrual cycle difficulties, amenorrhea, weight gain, and fatigue. (Sang Interrog. Resp. No. 24.) She sought medical care to address these issues from several providers in both Minneapolis and San Francisco. (Sang Interrog. Resp. Nos. 24, 26.)

In 2009, Sang commenced the instant action asserting two federal-law claims (excessive force and false arrest) and five state-law claims (assault, battery, false imprisonment, false arrest, and negligence). Defendants assert that they are entitled to summary judgment on each of these claims.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves, 229 F.3d at 723; Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.     The federal claims**

The Court begins its analysis with Sang's federal claims, which provide the basis for the Court's subject-matter jurisdiction.[3]

    **A.     False arrest**

In her first federal claim, Sang alleges that Defendants Skog and Frazer arrested her without probable cause in violation of the Fourth Amendment. These Defendants argue that they are entitled to qualified immunity on this claim.

When analyzing whether a police officer is entitled to qualified immunity, a court must conduct a two-part inquiry. First, it must consider whether the facts alleged, when viewed in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right. If a violation could be established based on those facts, the court must then inquire whether the constitutional right at issue was clearly established at the time the violation occurred. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004).

---

[3] Sang has named 41 Defendants in this matter (Am. Compl. ¶¶ 11-18). At oral argument, after requiring all Defendants to remain in this lawsuit throughout discovery, Sang moved to dismiss all Defendants except the City of St. Paul, Eric Skog and Steven Frazer. With the exception of these three Defendants, all remaining Defendants will be dismissed with prejudice.

### 1. Constitutional violation

The Fourth Amendment guarantees individuals the right to be free from arrest without probable cause. E.g., Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). Even where probable cause is not present, however, an officer is entitled to qualified immunity if probable cause *arguably* existed at the time the officer made the arrest. Id. This is because "the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable." Id. Therefore, the operative test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

The Court concludes that there is a genuine issue of material fact regarding whether there was arguable probable cause to arrest. "Probable cause" exists when the "facts and circumstances within the officer's knowledge and of which the officer ha[s] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing" that a crime has been committed. Williams v. City of Carl Junction, 480 F.3d 871, 877 (8th Cir. 2007) (internal quotation marks and citation omitted). As described above, the parties present different factual assertions regarding what occurred immediately prior to Sang's arrest. Sang denies receiving anything from Johnson immediately prior to her

arrest.[4] The video recordings do not display a handoff, and when Sang's property was inventoried, nothing was found that could reasonably be confused as a weapon or bag of hazardous material. According to Sang, the only action she took prior to her arrest was observing police conduct. These facts, which must be accepted for purposes of the present Motion, do not constitute arguable probable cause. Accordingly, summary judgment must be denied. See Kukla v. Hulm, 310 F.3d 1046, 1049 (8th Cir. 2002) ("[I]f the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment."); Gainor v. Rogers, 973 F.2d 1379, 1385 (8th Cir. 1992) ("[W]here there are genuine issues of material fact surrounding an arrestee's conduct it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law."); Weiner v. Lappegard, Civ. No. 04-630, 2005 WL 1155943, at *4 (D. Minn. May 16, 2005) (Kyle, J.) ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.").[5]

---

[4] In her deposition, when asked whether Johnson passed an object to her, Sang stated, "I can't recall a single object being passed from Jason to me from what I can remember." (Sang Dep. Tr. at 43.) Defendants construe this testimony as demonstrating Sang's inability to recall whether Johnson passed an object to her. Accordingly, they contend that the Court may presume an object was in fact exchanged, or that Officer Johnson reasonably believed that such an exchange occurred. (Reply at 3.) The Court does not agree. While less than unequivocal, when read in context, the Court interprets Sang's deposition testimony as denying the receipt of any object from Johnson immediately prior to her arrest.

[5] Even if the record established that an object was passed between Johnson and Sang, the Court is not persuaded that such behavior alone is enough to constitute arguable probable cause.

Defendants contend that even when viewing the evidence in the light most favorable to Sang, they nevertheless had arguable probable cause to arrest. The Court does not agree. Defendants highlight the escalating situation confronting them at Mears Park. Indeed, they were faced with a large crowd of 1,000 protesters, some of whom were hurling hazardous materials as weapons. Defendants also emphasize the behavior of Johnson, noting that he was suspicious because of his close proximity to mounted officers, an alleged association with an anarchist group, and an "intense" look on his face. (Officer Johnson Aff. ¶ 3; Skog Aff. ¶¶ 5-6.)

While the Court recognizes the dangerous environment confronting Defendants at Mears Park, such an environment alone cannot be sufficient to create arguable probable cause. Moreover, even if the Court were to assume that Johnson's behavior was in fact suspicious, Sang's association with Johnson is not a basis upon which to establish arguable probable cause to arrest her.[6]

Defendants further assert that Sang attempted to flee after the arrest of Johnson, supplying arguable probable cause. However, Sang contends that she was not fleeing, but merely backing away from approaching mounted officers. (Sang Dep. Tr. at 37-38.) In any event, flight alone is insufficient to establish probable cause to arrest. See Wong Sun v. United States, 371 U.S. 471, 482-84 (1963) (holding that flight is "ambiguous conduct"

---

[6] Defendants also note that Johnson and Sang disregarded officer directives to back up onto the sidewalk, and instead walked between mounted officers a few moments prior to their arrest. (Reply at 7.) However, Defendants do not contend that this behavior, in and of itself, was

9

not necessarily suggesting criminal activity). Accordingly, because a question of fact exists as to the existence of arguable probable cause, qualified immunity is not appropriate.

### 2. Clearly established

Defendants contend that even if a constitutional violation occurred, they are nevertheless entitled to qualified immunity because the violation was not clearly established at the time of Sang's arrest. Specifically, Defendants assert, "it was not clearly established an officer facing a large hostile crowd, in which anarchists armed with urine and feces were known to be present, could not arrest a person who was perceived to receive a bag containing a liquid." (Mem. in Supp. at 18.) However, as described above, there is an issue of fact as to whether Johnson passed <u>anything</u> to Sang, and therefore, there is a question of fact as to whether Officer Johnson saw anything providing arguable probable cause to arrest.

It is beyond dispute that the right to be free from arrest without probable cause is clearly established. <u>Habiger v. City of Fargo</u>, 80 F.3d 289, 295 (8th Cir. 1996). Viewing the facts in the light most favorable to Sang, she was arrested after merely being present at a hostile protest scene in close proximity to officer activity. Such behavior alone is not arguable criminal activity, nor do Defendants assert that it is. In fact, the Eighth Circuit has held that no arguable probable cause exists when an arrestee merely observes police activity. See <u>Walker</u>, 414 F.3d at 992-93 (no qualified immunity when plaintiff was

---

illegal, or that they had arguable probable cause to arrest Sang for disobeying officer commands.

arrested after watching police conduct from a distance without communicating with the officers).[7] The Court finds that no reasonable officer would believe that he had probable cause to arrest when viewing the evidence in the light most favorable to Sang. Accordingly, summary judgment is not appropriate on her federal false-arrest claim.[8]

B.    **Excessive force**

Sang alleges that Skog and Frazer used excessive force in effectuating her arrest in violation of the Fourth Amendment. These Defendants assert that they are entitled to qualified immunity on this claim. The Court agrees.

It is well settled that the Fourth Amendment precludes the use of excessive force by law-enforcement officers. E.g., Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005).

---

[7] Defendants cite Owaki v. City of Miami, 491 F. Supp. 2d 1140 (S.D. Fla. 2007), Delgado v. Miami-Dade County, 456 F. Supp. 2d 1234 (S.D. Fla. 2006), and Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003), in support of their argument that the constitutional violation at issue was not clearly established at the time of Sang's arrest. (Reply at 11-13.) However, in each of these cases, the actual occurrence of arguable criminal activity was not disputed. In Owaki, it was not disputed that the plaintiff locked arms with protesters, indicating that he was unwilling to obey police directives. 491 F. Supp. 2d at 1154. In Delgado, it was undisputed that the plaintiff was walking with a group of people matching the description of protesters who had recently thrown rocks, 456 F. Supp. 2d at 1236, and in Durruthy, it was undisputed that the plaintiff was present in a public street in violation of state law, 351 F.3d at 1085. In this case, however, it is disputed that Sang did anything other than observe police conduct. Accordingly, Owaki, Delgado, and Durruthy do not support the grant of qualified immunity in this case.

[8] While not directly asserted, it appears that Sang also takes issue with the length of the detention following her arrest. (Mem. in Opp'n at 16, 30.) There is no dispute that Sang was detained for approximately 24 hours. (Id. at 9, 16; Reply at 4.) In Gerstein v. Pugh, 420 U.S. 103, 125 (1975), the United States Supreme Court held that probable cause determinations must occur "promptly after arrest." However, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement." County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). Here, there is nothing in the record demonstrating that Sang's detention was delayed unreasonably or exceeded

11

In deciding whether the amount of force used was constitutionally excessive, the Court must apply an "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 392 (1989); accord Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006). Under that standard, the Court must evaluate the facts and circumstances surrounding the use of force, "including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [she] . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight." Samuelson, 455 F.3d at 875 (internal quotation marks and citation omitted).

In this case, Sang contends that she was surrounded by mounted police officers, seized by the arm, and then placed in handcuffs that were later tightened. She also contends that an unnamed officer pointed a pepper spray canister at her. With regard to her physical injuries, Sang asserts that she suffered bruised wrists as a result of the handcuffing. In addition to this non-permanent injury, she contends that she suffered emotional trauma, which resulted in menstrual cycle difficulties, amenorrhea, weight gain, and fatigue.

In order to conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during an arrest does not *ipso facto* establish a Fourth-Amendment violation. Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized . . . the right to make an arrest . . .

---

48 hours. Accordingly, the length of Sang's detention does not provide a basis for a federal cause of action.

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted). Accordingly, an excessive-force claim lies only when a plaintiff suffers an "actual injury" resulting from force employed during an arrest. E.g., Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). Simply put, "a *de minimus* [Sic] . . . injury is insufficient to support a finding of a constitutional violation." Crumley, 324 F.3d at 1007.

There is no dispute that as a result of her arrest, Sang suffered no substantial injury; rather, Sang experienced non-permanent bruised wrists and psychological trauma. In the Court's view, Sang's injuries are simply insufficient to support an excessive-force claim. See Cook v. City of Bella Villa, 582 F.3d 840, 853 (8th Cir. 2009) ("Generally, allegations of an officer's use of a de minimis amount of force, without any resulting injury, are insufficient to support a finding of a constitutional violation."); Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) ("[R]elatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the officer] did not use excessive force."); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) ("[A]llegations of pain . . . without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force."). Indeed, the Eighth Circuit in Crumley found physical injuries nearly identical to those suffered by Sang to be insufficient to support an excessive-force claim. 324 F.3d at 1008 (holding that non-permanent injuries resulting from tight handcuffing are insufficient to create an excessive-force claim in the absence of long-term

or permanent injury).

Putting aside the *de minimis* nature of Sang's injury, the Court finds that no reasonable jury could find that the use of force utilized by Defendants was excessive under the "objective reasonableness" test. Officers approached Sang on horseback, seized her by the arm, and led her to an arrest team. This is not an unreasonable use of force under the circumstances here. See Curd v. City Court of Judsonia, 141 F.3d 839, 841 (8th Cir. 1998) (holding that seizing plaintiff by the arm and turning her around was not an unreasonable use of force). Moreover, the application of handcuffs, even when tightly secured, is not an unreasonable use of force. See Crumley, 324 F.3d at 1008; Foster, 914 F.2d at 1082. Finally, with regard to the pointed pepper spray canister, no named Defendant is responsible for this action. Accordingly, Defendants are entitled to qualified immunity on Sang's excessive-force claim.

## II. The state-law claims

Having concluded that Sang's federal false-arrest claim survives Defendants' Motion for Summary Judgment, the Court must turn its attention to her state-law claims, over which the Court has supplemental jurisdiction. See 28 U.S.C. § 1367. All state-law claims are brought against Defendants Skog, Frazer, and the City of St. Paul.

### A. Official immunity

Defendants argue that they are entitled to official immunity on Sang's state-law claims. Like qualified immunity, official immunity protects public officials, including police officers, from liability for state-law claims arising out of discretionary acts taken in

the course of their official duties. E.g., Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990). Municipalities, such at the City of St. Paul, are entitled to vicarious official immunity from lawsuits based upon the acts of officers entitled to official immunity. Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 663-64 (Minn. 2004). Sang argues that Defendants are not entitled to official immunity because their actions were not discretionary; she also argues that Defendants are not entitled to official immunity because their conduct was willful or malicious. See Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991) (noting that official immunity does not protect an official from liability for willful or malicious wrongs).

It cannot seriously be disputed that Defendants' actions were discretionary in this case. Minnesota courts generally recognize that "the duties of police officers call for the exercise of significant judgment and discretion." State v. City of Mounds View, 518 N.W.2d 567, 569-70 (Minn. 1994). Specifically, the decision to stop and detain a suspect "requires a significant degree of independent judgment and discretion." Id. at 570. Accordingly, the only question is whether the conduct underlying Sang's state-law claims was willful or malicious, which will be addressed as each claim is analyzed below.

### B. Assault and battery

Sang's first state-law claims are for assault and battery. Defendants argue that these claims fail as a matter of law.

In Minnesota, an assault is a threat of "bodily harm to another with [the] present ability to effect that threat," Elwood v. Rice County, 423 N.W.2d 671, 679 (Minn. 1988),

15

and a battery is the "intentional unpermitted offensive contact with another," Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). However, "a police officer is permitted to come in contact with an individual in the course of arresting and detaining him." Paradise, 297 N.W.2d at 155. Accordingly, only when a police officer uses excessive force may he be liable for battery under Minnesota law. Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). In addition, "[t]he use of threatened force by a peace officer is lawful if it is a reasonable use of force when used in affecting an arrest." Morris, 453 N.W.2d at 41. As described above, no reasonable jury could find that the force utilized to effectuate Sang's arrest, both threatened and actual, was excessive or unreasonable. Accordingly, Sang's assault and battery claims will be dismissed.[9]

### C. False arrest and false imprisonment

Sang next brings state-law claims for false arrest and false imprisonment. The tort of false imprisonment is similar to the tort of false arrest under Minnesota law. "An arrest made without proper legal authority is a false arrest, and any subsequent restraint is false imprisonment." Adewale v. Whalen, 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998) (Tunheim, J.). Therefore, the essential elements of both claims are "(1) an arrest

---

[9] Even if Sang's assault and battery claims did not fail as a matter of law, Defendants would nevertheless be entitled to official immunity/vicarious official immunity on these claims because there is no evidence in the record demonstrating subjective malice. See Wertish, 433 F.3d at 1067 (affirming dismissal of Minnesota state-law assault and battery claims when the record contained no evidence of subjective malice and officers were entitled to qualified immunity on federal excessive-force claim).

performed by defendant, and (2) the unlawfulness of such arrest." Lundeed v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).

First, Defendants argue that Sang's false-arrest and false-imprisonment claims fail as a matter of law because there was arguable probable cause for her arrest. However, as discussed above, there is a genuine issue as to whether arguable probable cause existed to arrest Sang. Accordingly, the claims for false arrest and false imprisonment cannot be dismissed on this basis.

Second, Defendants assert they are entitled to official immunity/vicarious official immunity. However, an officer is not entitled to official immunity, as noted above, for acts done willfully or maliciously. In Minnesota, the terms "willful" and "malicious" are given the same meaning for purposes of official immunity; "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Rico, 472 N.W.2d at 107. Stated another way, an official is not entitled to immunity if he "intentionally commit[s] an act that the official has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). The legal inquiry regarding malice is "an objective inquiry into the legal reasonableness of an official's actions." City of Mounds View, 518 N.W.2d at 571. Generally, the question of whether an official acted with malice is a question of fact for the jury. Morris, 453 N.W.2d at 42.

Viewing the facts in the light most favorable to Sang, Defendants are not entitled to official immunity on her false-arrest and false-imprisonment claims. If Sang was

17

arrested after simply observing police conduct, a reasonable jury could find that Defendants willfully violated Sang's constitutional rights, as they had reason to believe that an arrest based upon such conduct was legally prohibited. Accordingly, the reasoning that led the Court to deny Defendants qualified immunity on Sang's federal false-arrest claim applies with equal force in denying them official immunity on Sang's false-arrest and false-imprisonment claims. See Craighead v. Lee, 399 F.3d 954, 963 (8th Cir. 2005) ("Whether or not an officer acted willfully or maliciously is usually a question of fact to be resolved by the jury. The reasoning that led us to affirm the denial of qualified immunity as to plaintiff's Section 1983 claims leads us to affirm the denial of official immunity as to the state-law claims."). Accordingly, Sang's false-arrest and false-imprisonment claims will stand.

### D. Negligence

Sang's final state-law claim is for negligence. The claim of negligence, however, is not based upon willful or malicious conduct, but instead only requires proof that the defendant did not conduct himself as a "reasonably prudent person." Bjerke v. Johnson, 727 N.W.2d 183, 190 (Minn. Ct. App. 2007). Accordingly, even if Defendants were negligent, such a cause of action is barred by the doctrine of official immunity, which protects officers from liability in performing discretionary acts unless those acts are done willfully or maliciously. Rico, 472 N.W.2d at 107. Therefore, the negligence claim against Skog and Frazer will be dismissed pursuant to the doctrine of official immunity, and the claim against the City of St. Paul will be dismissed under the doctrine of vicarious

official immunity. Anderson, 678 N.W.2d at 663-64.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 29) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

- A. Defendants' Motion is **GRANTED** as to Sang's federal-law excessive-force claim (Claim I of the Amended Complaint) and state-law assault, battery, and negligence claims (Claims II, III, IV, V, VI, VII, XII of the Amended Complaint) and these claims are **DISMISSED WITH PREJUDICE**;

- B. To the extent that Claims I-XII of the Amended Complaint seek relief against the City of Minneapolis, Don Anderson, Ann Bebeau, Lance Christianson, Kent Cleveland, Jon Conney, Jay Curiel, Pat Daly, Louis Ferraro, Dan Ficcadenti, Greg Gravesen, Bill Haider, Don Hase, Andrew Heroux, Frank Judge, Chris Kasal, Pat Kolodge, Phil Koski, Josh Lego, Colleen Luna, Lynn Mahnke, Eric Meyers, Frank Molina, Anthony Nikula, Joe Ryan, Matt St. Sauver, Jeff Thissen, Matt Webb, Doug Whittaker, Lee Vang, Kevin W. Reinke, Officer Sass, Joe Neuberger, and Officers K-O, Defendants' Motion is **GRANTED,** these claims are **DISMISSED WITH PREJUDICE,** and Plaintiff is **ORDERED** to amend the case caption accordingly; and

- C. In all other respects, Defendants' Motion is **DENIED**.[10]

Dated: June 8, 2010             s/Richard H. Kyle
                                                            RICHARD H. KYLE
                                                            United States District Judge

---

[10] In deciding the instant Motion, the Court has noted the existence of critical issues of material fact. At trial, the jury will determine the relevant facts surrounding Sang's arrest. The Court does not opine as to the viability of Sang's surviving claims if her version of the facts, as described in detail above, is not found by the jury. In addition, the parties are reminded that this case is deemed ready for trial as of September 1, 2010, and will go to trial in September if not otherwise resolved.